UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CYNTHIA BOWER,<br>  Plaintiff,<br><br> vs.<br><br>COVINGTON FOODS, INC. d/b/a ATTICA IGA,<br>  Defendant. | 1:10-cv-00790-LJM-DKL |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's, Covington Foods, Inc. d/b/a Attica IGA ("Covington"), Motion for Summary Judgment [dkt. no. 35]. Plaintiff, Cynthia Bower ("Bower"), alleges that Covington demoted her and eventually terminated her employment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. and, further, that Covington violated Indiana common law by terminating her in retaliation for her filing of a worker's compensation claim. The Court has considered the evidence and the parties' arguments[1] and for the reasons below **GRANTS** Covington's Motion for Summary Judgment [dkt. no. 35].

## I. BACKGROUND

On May 21, 2004, Bower was hired to work at Covington at the deli. Bower Dep. at 93-94. Approximately a year later, Bower moved from the deli counter to third shift stocking. *Id.* at 95. The job of a third shift stocker primarily consisted of getting the store

---

[1] The Court notes that pending on the docket is Bower's unopposed motion to amend/correct her opposition to summary judgment [dkt. no. 45]. Bower's motion is **GRANTED**.

ready for the next day. *Id.* at 96. Within a few months of becoming a third shift stocker, Bower became the acting manager on the third shift. *Id.* at 102. As acting manager, she oversaw other employees. *Id.* at 107. She could assign them tasks and duties and had disciplinary authority over them. *Id.* Bower's direct supervisor was Duane Roderick ("Roderick"). *Id.*

On January 1, 2008, Bower was standing on a stock stool retrieving things from behind the coffee grinder. *Id.* at 228. She began to lose her footing, and she put her hand on the coffee grinder to restabilize. *Id.* The lid was off of the coffee grinder, and her left hand went into the grinder and she heard a "snap." *Id.* So, she pulled it back and fell backwards, landing on her head and back. *Id.* The next day she underwent surgery on her left hand. *Id.* at 233. On January 11, 2008, she was released to return to work with the restriction that she was not to use her left hand or arm, and she returned to work that same day. *Id.* at 235. As a result of her injuries, she had to slow down her pace of work, and she only lifted with her right hand and arm. *Id.* at 236. On August 11, 2008, Bower's doctor lifted her working restrictions. *Id.* at 245.

On June 29, 2008, Roderick suspended Bower from her position as acting manager. *Id.* at 163. Roderick called her into his office and told her that because she had written checks that were returned for insufficient funds and he was "tired of her bad language" she was suspended until further notice. *Id.* at 164. Then, on July 7, 2008, Bower was demoted from her position as acting manager. *Id.* at 163. On September 12, 2008, Bower informed Roderick and "HR Lisa" that she had hired an attorney for her worker's compensation claim. *Id.* at 294. On September 26, 2008, Covington terminated Bower's employment for using "foul language" in front of customers and threatening Roderick. *Id.* at Def.'s Ex. 19.

The Court includes additional facts below as necessary.

## II. **STANDARD**

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the

responsibility of identifying applicable evidence.  *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim.  *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994).  "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III.  **DISCUSSION**

Bower asserts claims under the ADA for both unlawful demotion and unlawful termination as well as a claim under Indiana law for unlawful retaliation based upon her decision to file a worker's compensation claim.  First, the Court will address Bower's ADA claims and then it will turn its attention to Bower's Indiana law claim.

The ADA prohibits discrimination against a "qualified individual with a disability."  42 U.S.C. § 12112(a).  In order to prove her disability discrimination claims, Bower may either present direct evidence of discrimination or she may rely upon the circumstantial evidence burden-shifting method.  Bower attempts to prove her claims under the indirect, burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*.  *See* 411 U.S. 792 (1973).

In order to establish a prima facie case of discrimination under the indirect method of proof, Bower must show that at the time of the discrimination she was: (1) a qualified individual with a disability; (2) her work performance met Covington's legitimate job expectations; (3) she experienced an adverse employment action; and (4) Covington treated similarly situated non-disabled employees more favorably.  *Moser v. Indiana Dep't of Corr.,* 406 F.3d 895, 901 (7th Cir. 2005)*; DeLuca v. Winer Indus.*, 53 F.3d 793, 797 (7th Cir. 1995).  There is no dispute that Bower experienced adverse employment action.  If Bower establishes her prima facie case, the burden shifts to Covington to articulate a legitimate, nondiscriminatory reason for its actions.  *DeLuca*, 53 F.3d at 797.  If Covington succeeds, then the burden reverts to Bower to show that there is a genuine dispute of material fact that Covington's proffered reason for the employment action is pre-textual.  *Id.*

Covington asserts that at the time of both her demotion and termination, Bower did not have a disability under the ADA. An individual has a "disability" within the meaning of the ADA if she has "a physical or mental impairment that substantially limits one or more major life activities . . .; a record of such an impairment; or [is] . . . regarded as having such impairment." 42 U.S.C. § 12102(2). In support of its argument, Covington cites Bower's deposition testimony that Dr. Merle, the physician assigned to her worker's compensation case, released her to work with no restrictions. However, Bower stated in a later affidavit that after her injury she experienced debilitating spasms in her wrist and that in September 2008, because of her injured wrist, she could not get dressed by herself, tie her shoes, wash her hair, and had trouble with other matters involving hygiene. Bower Aff. ¶¶ 10-11. Bower's statements regarding the condition of her wrist do create a triable question of fact as to whether, as the time of her termination, she was substantially limited in her ability to care for her herself and perform manual tasks. Furthermore, her statements indicate that the condition of her wrist is permanent, or at the least, long term, as she reports that symptoms persist through the time of her deposition and affidavit. Bower Dep. at 256-58; Bower Aff. ¶¶ 10-11.

Covington asserts that the Court cannot consider Bower's statements in her affidavit because it conflicts with her earlier deposition testimony. *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions."). Covington's argument is inapposite. Bower does not contradict her deposition testimony with her affidavit. In her deposition she testifies that the doctor released her back to work with no restrictions while simultaneously

6

expressing doubts about the doctor's motivations. Bower Dep. at 245. She never states in her deposition that she did not experience any physical symptoms after she was released to work without restrictions. In fact, Bower testified in her deposition that she could no longer engage in several activities after her hand was injured and further stated that "[w]hen it comes to sex, work, everything, it's all different. It's a whole new line of life." Id. at 256-57. Indeed, a court may consider self-serving statements in affidavits at summary judgment if they: (1) "have factual support in the record"; and (2) are based upon "personal knowledge." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 921, 925 (7th Cir. 2004). Bower's affidavit statements do find support in her deposition testimony and are based upon her personal knowledge of her own abilities and limitations. Accordingly, the Court will consider Bower's statements in her affidavit regarding her condition and concludes that there is a triable question of fact as to whether she is disabled within the meaning of the ADA.

Next, the Court will turn its attention to the parties' arguments regarding Covington's treatment of similarly situated employees. *See Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007) (noting that "[t]he prima facie case and pretext inquiries often overlap; [the Court] may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext if the defendant offers a nondiscriminatory explanation for its employment decision"). Covington asserts that Bower can point to no evidence suggesting that she was treated less favorably than similarly situated, non-disabled, comparators. Specifically, Covington argues that because Bower cannot establish a comparator who had the same list of offenses as Bower and further because Bower cannot establish that a comparator with those same offenses who was demoted and then

7

discharged after two witnesses reported to Roderick that the comparator engaged in inappropriate behavior. Covington correctly asserts that in order to fulfill the "similarly situated" prong of her prima facie case, Bower must identify employees who are comparable to herself in all material respects. *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846-47 (7th Cir. 2006). However, the inquiry as to whether two employees are "similarly situated" is one of common sense that depends upon the employment context. *Filar v. Bd. of Educ.*, 526 F.3d 1054, 1061 (7th Cir. 2008). Indeed, Bower need not "present a doppelganger who differs only by having remained the employer's good graces." *Id.* However, Bower must show "substantial similarity" between herself and the alleged similarly situated employee such that "confounding variables, such as differing roles, performance histories, or decision-making personnel" are eliminated. *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). "In other words, the inquiry simply asks if there are sufficient commonalities on the key variables between [Bower] and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id.*

Bower presents the affidavits of two other third-shift employees, Calvin Smith and Ed Wilson as proof that similarly situated, non-disabled employees were not subjected to adverse employment action. Covington asserts that these affidavits are too conclusory to create any genuine issue of material fact. *See Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 659-60 (7th Cir. 1991). Bower argues that the affidavits are admissible testimony made by individuals with first-hand knowledge of the events articulated in their affidavits. However, the virtually identical affidavits are incredibly broad and lacking almost completely in context. Each states that:

> during the course of my employment, I regularly rang up my own purchases, I wrote checks for more than $20 dollars over my purchase price, used inappropriate language on the floor and in front of customers, made comments about IGA's failure to provide a safe work environment, took customer's pump perks when they gave them to me, and failed to clock out during lunch.

Smith Aff. at ¶ 3; Wilson Aff. at ¶ 3. Each also stated that "Duane Roderick was aware that I engaged in this conduct. Moreover, I recall one or more meetings at which Roderick would instruct us that we were to discontinue these practices." Smith Aff. at ¶¶ 5-6; Wilson Aff. at ¶¶ 5-6. There is no other evidence in the record that supports these assertions. Furthermore, the affidavits themselves fail to provide any time table as to when the meetings occurred in which Roderick instructed "us" to discontinue "these practices." The affidavits do not make clear who Roderick was talking too and what practices, specifically, he was instructing them to discontinue. Accordingly, neither the affidavits nor any other designated evidence supports the conclusion that Roderick was aware of this specific behavior on the part of Smith and Wilson. Such broad-brushed conclusory allegations will not suffice to create a triable question of fact on the issue of whether Smith an Wilson are similarly situated for the purpose of Bower's prima facie case of discrimination. *See Scaife v. Cook County*, 446 F.3d 735, 740 (7th Cir. 2006) (concluding that an affidavit listing names of other employees and stating that they "regularly came in late to work and left early from work without discipline from 1999 through and including 2003" was too conclusory to raise a genuine issue of material fact).

Bower also argues that she is similarly situated to herself. She admits to engaging in the behavior that Covington asserts as its legitimate non-discriminatory reason for demoting and eventually terminating her, but claims that she was simply acting the same

9

as she did prior to her disability. In support of her theory, Bower cites two cases. First, *Smith v. Southwestern Bell Telephone*, where the court concluded after a bench trial that the plaintiff failed to a causal connection between her statuorily protected activity, in this case filing a sex-discrimination claim, and the alleged adverse actions. 724 F. Supp. 630, 636 (F.D. Ark. 1989). *Smith* is inapposite to the case at hand. Indeed, the court discusses comparing the behavior of the employer to the employee before and after the employee's statutorily protected activity, but it is not in the context of the similarly-situated prong of the *McDonnell Douglas* test. *Id.* Furthermore, although the court notes that a plaintiff may put forward that type of evidence to prove a causal connection, it did not use any such evidence to conclude that a causal connection existed in the *Smith* case. *Id.*

In support of her theory that she is similarly situated to herself, Bower also cites *Henry v. City of Detroit*. 594 N.W.2d 107 (Mich. Ct. App. 1999). The court in Henry applies similar logic to conclude that the plaintiff created a triable question as to whether he was retaliated against in contravention of the state Whistleblower's Protection Act. *Id.* at 112-13. *Henry* is distinguishable from Bower's case in that concerns a totally different body of law than the case at bar. Additionally, the evidence of differing treatment is used to show that there may be some causal connection between the adverse employment action and Henry's statutorily protected action. It is not used to show that the plaintiff was similarly situated to himself prior to undertaking the statutorily protected action. *Id.* It is logically impossible for Bower to be similarly situated to herself. Her actions are cumulative. Any behavior she engaged in prior to her injury necessarily aggregates with any behavior she engaged in after her injury. Therefore, comparing the treatment Bower experienced prior to her injury to the treatment Bower experienced after her injury is akin to comparing apples

and oranges and cannot yield a reasonable inference of discrimination. Bower presents no other evidence suggesting that there were other employees with a similar list of infractions that Covington treated more favorably than she. Accordingly, Bower fails to satisfy her prima facie case under the rubric of *McDonnell Douglas*, and the Court **GRANTS** summary judgment in favor of Covington on Bower's ADA claims.

Next, the Court turns its attention to Bower's unlawful retaliation claim under Indiana law. In *Frampton v. Central Indiana Gas Co.*, the Indiana Supreme Court first recognized a public policy exception to the employment at will doctrine. 297 N.E.2d 425 (1973). Frampton had filed a claim under worker's compensation and, as a result, Central Indiana Gas fired him. The court declared that "when an employee is discharged solely for exercising a statutorily conferred right, an exception to the general rule [of at will employment] must be recognized. *Id.* at 428. In order to survive a motion for summary judgment on a claim for retaliation under *Frampton*, Bower must establish a causal connection between the filing of her worker's compensation claim and her subsequent termination. *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 560 (7th Cir. 2011). Specifically, to succeed, Bower must demonstrate that her discharge was "solely in retaliation for the exercise of a statutory right, meaning that any and all reasons for the discharge were unlawful." *Id.* at 560; *see also Markley Enters, Inc. v. Grover*, 716 N.E.2d 559, 566 (Ind. Ct. App. 1999) (explaining that the "use of the word 'solely' in *Frampton* is meant only to convey that any and all reasons for discharge must be unlawful in order sustain a claim for retaliatory discharge").

"To survive summary judgment on a *Frampton* claim, the plaintiff must present evidence that would support a finding that the discharge was caused by [her] filing for

11

benefits." *Mack v. Great Dane Trailers*, 308 F.3d 776, 784 (7th Cir. 2002).  In order to do so, Bower must establish a causal connection between her termination and the filing through either direct or indirect evidence.  Bower chooses to proceed on indirect evidence. Typical examples of indirect evidence include proximity in time between the plaintiff's filing of the claim and the termination and evidence that the employer's asserted lawful reason for the discharge is pretext.  *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1262 (Ind. Ct. App. 2002).  Bower argues that both types of indirect evidence are at issue.

As to the temporal proximity between the filing of the claim and the termination, the Court notes that nine months lapsed between plaintiff's injury and report to worker's compensation and her termination.  However, on September 12, 2008, just a few weeks prior to her termination, Bower informed Roderick and another supervisor that she had hired an attorney for her worker's compensation claim.  Bower Dep. at 294.  Covington asserts that regardless of the timing, the temporal evidence is a wash because on September 13, 2008, Bower, as reported by two witnesses, cursed on the floor in front of customers after having been warned not to a month prior and further used crude language to a customer in the parking lot while she was on the clock.  Bower Dep. at Ex. 19.  Indeed, given the context of Bower's timing evidence the Court concludes that it is insufficient in and of itself to create a jury issue on causation.  *See Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 594 (7th Cir. 2008) (affirming summary judgment where employee was unable to establish causal connection due to intervening event of unexcused absences).

Causation may also be inferred from evidence of pretext, "evidence that the employer's proffered reason for the discharge is patently inconsistent with the evidence before the court."  *Mack*, 308 F.3d at 784 (internal quotation omitted).  "Pretext means a

12

dishonest explanation, a lie rather than an oddity or an error." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001). In determining pretext, the Court's only concern is "the honesty of the employer's explanation." *Id.* at 984.

Covington offered a lawful reason for terminating Bower: her crude behavior and failure to follow store policies, culminating in the events of September 13, 2008. Bower relies on her evidence and arguments offered in support of her ADA claim to show that Covington's asserted reasons for terminating her are pretextual. However, Bower's evidence is lacking. Her assertion that Roderick "appeared angry" about the method by which Bower injured herself and that the same anger was also dissatisfaction that Covington had to deal with Bower's subsequent worker's compensation claim is speculative and not supported by the record. *See* Bower Dep. at 294. Furthermore, Covington's increasing disciplinary treatment of Bower—first demotion, then termination— belies the notion that a reasonable jury could find that Bower was fired solely in retaliation for filing a worker's compensation claim. Accordingly, with respect to Bower's *Frampton* claim, Court **GRANTS** summary judgment in favor of Covington.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the defendant's, Covington Foods, Inc. d/b/a Attica IGA, Motion for Summary Judgment in its entirety [dkt. no. 35].  The plaintiff, Cynthia Bower, shall take nothing by way of her complaint.  Judgment shall enter accordingly.

IT IS SO ORDERED this 30th day of March, 2012

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Terry W. Dawson
BARNES & THORNBURG LLP
terry.dawson@btlaw.com

Andrew  Dutkanych III
BIESECKER DUTKANYCH & MACER LLC
ad@bdlegal.com